[Cite as *In re J.C.*, 2014-Ohio-2743.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

J.C., M.B., J.B., & C.O.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 13-CA-83,
            13-CA-84

O P I N I O N

CHARACTER OF PROCEEDING:

Appeal from the Fairfield County Court of
Common Pleas, Juvenile Division Case
Nos. 2012AB64, 2012AB65, 2012AB66,
and 2012AB67

JUDGMENT:

Affirmed

DATE OF JUDGMENT ENTRY:

June 23, 2014

APPEARANCES:

For Appellant -
Scheena Goldsmith

JESSICA L. MONGOLD
123 South Broad Street
Suite 206
Lancaster, Ohio 43130

For CO, JC, MB, JB

TREVOR J. INNOCENTI
117 W. Main St., Suite 206
Lancaster, Ohio 43130

Guardian Ad Litem

JACOB ORT
13297 Rustic Drive NW
Pickerington, Ohio 43147

For Appellee -
Fairfield County Child Protective Services

GREGG MARX
Prosecuting Attorney

By: Andrea K. Green
Assistant Prosecuting Attorney
Fairfield County, Ohio
239 W. Main Street, Ste. 101
Lancaster, Ohio 43130

For Justin Burley, Sr.

ERIN MCENANEY
23 1/2 - S. Park Place Ste. 207 D
Newark, Ohio 43055

*Hoffman, P.J.*

**{¶1}** In Fairfield App. No. 13CA83, Appellant Scheena Goldsmith ("Mother") appeals the October 30, 3013 entries entered by the Fairfield County Court of Common Pleas, which terminated her parental rights with respect to her four minor children, C.O., J.C., M.B., and J.B., and granted permanent custody of the children to Appellee Fairfield County Child Protective Services ("FCCPS"). In Fairfield App. No. 13CA84, Appellants C.O., J.C., M.B., and J.B. appeal the same judgment entries with regard to the trial court's denial of the motion for legal custody filed by Donna Logsdon, maternal grandmother.

## STATEMENT OF THE CASE AND FACTS

**{¶2}** Mother is the biological mother of J.C. (dob 9/13/2004), J.B. (dob 2/6/2007). M.B. (dob 2/18/2006), and C.O. (dob 3/25/2009).[1] The children were placed in the custody of FCCPS through a voluntary agreement for care on February 22, 2012. The voluntary agreement of care was extended on March 23, 2012, and again on April 21, 2012. The trial court placed the children in the temporary shelter care custody of FCCPS on May 17, 2013. On June 7, 2013, the trial court found the children to be dependent and placed them in the temporary custody of FCCPS.

**{¶3}** FCCPS filed a motion for permanent custody on February 11, 2013. On May 30, 2013, Donna Logsdon filed a motion for legal custody of the children. The trial court conducted a hearing on the motions on June 4, and September 17, 2013.

**{¶4}** Alexis Howard, the family-based care caseworker assigned to the family, testified J.C., J.B., and M.B. were originally together in the same foster home where

---

[1] The biological fathers of the children are not parties to this Appeal.

they had been placed in a prior case. C.O. was placed with a younger brother[2] in another foster home. J.C. was moved several times due to aggressive behavior, which included destruction of property.

{¶5} Mother's case plan required her to complete a parent/child interaction program offered by Denise Gardner at the Lighthouse, attend any parenting classes specific to the behaviors of her children, participate in school and mental health meeting regarding J.C.'s behavioral plan, and undergo counseling with the children and her boyfriend, Steven Troester. Additionally, Mother was to maintain her home and meet the children's basic needs. Mother was to follow through with any recommendations arising from her psychological evaluation.

{¶6} Howard testified Mother did not participate in the Lighthouse program with Denise Gardner because she (Mother) believed the program was similar to the one she had completed in a prior case. Howard explained to Mother how the program was different and how it would benefit her, but Mother refused to participate. Howard referred Mother to another parenting class, which she did complete, as well as a parenting support group, which she attended on one occasion. Howard noted, although Mother reported having a lot of trouble with J.C.'s behavior and occasionally M.B.'s behavior, Mother did not comply with the aspects of her case plan which directly related to those issues.

{¶7} Howard indicated Mother failed to obtain and maintain stable housing for herself and the children. Mother resided with Logsdon during much of the case. Howard explained Logsdon's home was not appropriate for the children due to issues of

---

[2] The paternal grandparents of the younger brother were eventually granted legal custody of the child.

domestic violence perpetrated by Logsdon's live-in boyfriend, Charles Kilgore.  Mother was arrested in March, 2013, and was incarcerated in the Fairfield County Jail until May, 2013, when she was convicted of attempted robbery and sentenced to three years in a state penal institution.  Mother did not have housing in place for herself and the children upon her release from prison.

{¶8}    Family counseling, which was another aspect of Mother's case plan, had commenced, but was not completed due to Mother's incarceration.  With respect to visitation, Mother had unsupervised visits with the children at Logsdon's residence until December, 2012.  FCCPS terminated unsupervised visits on December 28, 2012, due to Kilgore being present during visits as well as the animosity between Mother and Logsdon.  Mother had not visited the children since March, 2013, after she was arrested.

{¶9}    Howard expressed concerns regarding Mother's decision making ability.  Although Mother testified she had been working with her counselor, since August, 2012, on relationships with safe individuals, Mother continued to become involved with men with criminal records.  Her association with such individuals led to her felony conviction of attempted robbery.  Mother did not see her association with these men as problematic.

{¶10}  With respect to Logsdon, Howard questioned whether the grandmother had the ability to manage all of the children.  Visits between the children and Logsdon often became out of control.  Logsdon continued to reside with Charles Kilgore, who has a history of domestic violence as well as problems with alcohol abuse. Howard noted

the children's need for stability, and expressed concerns that they may be at risk for physical harm and at risk of contact with individuals who abuse drugs and/or alcohol.

{¶11} During the best interest portion of the hearing, Howard testified C.O., M.B., and J.B. are together in a foster home and all are bonded with their foster family. J.C. is feeling comfortable in his new foster situation. The children are affectionate with their foster families. Howard stated the children need a safe and stable environment where they do not have to worry about food and shelter. They need a consistent caregiver who will help them grow and develop, and reach their full potentials.

{¶12} At the conclusion of the testimony, the trial court ordered the parties to file proposed findings of fact and conclusion of law By October 4, 2013. Via four entries filed October 30, 2013, the trial court overruled Logsdon's motion for legal custody of all of the children, terminated Mother's parental rights, and granted permanent custody of the children to FCCPS. On the same date, the trial court filed findings of fact and conclusions of law.

{¶13} It is from these judgment entries Mother appeals, raising the following assignments of error:

{¶14} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF J.C., M.B., J.B., AND C.O. TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF SCHEENA GOLDSMITH AND PLACE THE MINOR CHILDREN IN THE PERMANENT CUSTODY OF FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES.

{¶15} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT J.C., M.B., J.B. AND C.O. COULD NOT OR SHOULD NOT BE PLACED WITH SCHEENA GOLDSMITH WITHIN A REASONABLE TIME."

{¶16} It is from the same the children appeal, asserting the following as error:

{¶17} "I. THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF THE CHILDREN TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES AND DENYING THE MATERNAL GRANDPARENT'S MOTION FOR LEGAL CUSTODY WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE, AS THE RECORD DOES NOT CONTAIN CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST AND THAT THE CHILDREN CANNOT BE PLACED WITH THE MATERNAL GRANDMOTHER WITHIN A REASONABLE TIME."

{¶18} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

MOTHER

I, II

{¶19} We elect to address Mother's assignments of error together. In her first assignment of error, Mother contends the trial court's finding an award of permanent custody was in the best interest of the children was against the manifest weight and sufficiency of the evidence. In her second assignment of error, Mother maintains the trial court's finding the children could not be placed with her within a reasonable time was against the manifest weight and sufficiency of the evidence.

**{¶20}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶21}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶22}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶23}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶24}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶25}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶26}** As set forth in our statement of the facts and case, supra, we find there was competent, credible evidence Mother failed to remedy the problems which caused

the removal of the children from the home. Mother failed to complete any aspect of her case plan, in large part due to her incarceration. It was not known whether Mother would be released in six months or three years. Upon her release, Mother will be required to reside in a Community Based Correction Facility for a period of four to six months. This post-release commitment lengthened the amount of time Mother would be unable to care for the children. In addition, upon her release, Mother intends to live with Logsdon.

**{¶27}** With respect to the best interest finding, the evidence revealed the children are doing well in foster care. They need stability, which Mother is unable to give them now or in the foreseeable future.

**{¶28}** Based upon the foregoing, we find the trial court's findings the children could not be placed with Mother within a reasonable time, and an award of permanent custody was in the children's best interest were not against the manifest weight of the evidence and were based upon sufficient evidence.

**{¶29}** Mother's first and second assignments of error are overruled.

CHILDREN

I

**{¶30}** In their sole assignment of error, the children submit the trial court's granting permanent custody to FCCPS and denying Logsdon's motion for legal custody was not supported by competent, credible evidence as the record fails to establish by clear and convincing evidence permanent custody was in the best interest of the children and fails to establish the children cannot be placed with Logsdon within a reasonable time.

**{¶31}** A trial court's determination on legal custody should not be overruled absent a showing of an abuse of discretion. *Stull v. Richland Cty. Children Services,* 5th Dist. Nos. 11 CA47, 11 CA48, 2012–Ohio–738. An abuse of discretion is when the trial court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).   In this type of dispositional hearing, the focus must be the best interest of the child. *In re C.R.,* 108 Ohio St .3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re Nawrocki,* 5th Dist. No.2004–CA–0028, 2004–Ohio–4208.

**{¶32}** For the reasons set forth in our analysis of Mother's assignments of error, we overrule this assignment of error.

**{¶33}** The judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Gwin, J.  and

Wise, J. concur